Todd Blanche
Attorney General
Brandon L. Pang
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 713-8450

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CESAR RUIZ,<br><br>Defendant. | Case No. 4:26-CR-6012-RLP-1<br><br>United States' Response to Defendant's Motions to Suppress and Request for Evidentiary Hearing<br>(ECF 24) |

Plaintiff United States of America, by and through Brandon L. Pang, Assistant United States Attorney for the Eastern District of Washington, submits the following Response to Defendant's Motion to Suppress and Request for Evidentiary Hearing. ECF 24.

## INTRODUCTION

The Defendant, Cesar Ruiz, is currently charged with one count of Felon in Possession of Ammunition in violation in 18 U.S.C. §§ 922(g)(1), 924(a)(8). ECF 1. The charge stems from an incident on November 17, 2025, wherein the College Place Police arrested Defendant during a traffic because he had an outstanding warrant for "Use/Delivery of Drug Paraphernalia". Following his arrest, officers

looked into the windows of Defendant's vehicle and observed a torch lighter and clear plastic baggies, both of which were consistent with narcotics and drug paraphernalia. The vehicle was seized pending a search warrant. A search warrant was authorized approximately 2 hours later that very same day, and officers located various items of drug paraphernalia. After a 3D printed firearm and ammunition were located, officers sought an amended search warrant authorizing recovery of those items as well.

Defendant subsequently filed the instant motion to suppress evidence on September 23, 2026. ECF 24.

## STATEMENT OF FACTS

On November 17, 2025, at approximately 10:13 AM, Officer Daniel Watkins of the College Place Police Department was observing traffic in the area of SE Larch Avenue and SE Lamperti Street in his fully marked patrol vehicle. Defendant's Exhibit 200, ECF 25-1, at 1. Officer Watkins observed a dark gray Toyota Camry being driven by Cesar Ruiz (Defendant). *Id.* Officer Watkins recognized the vehicle and Defendant from prior incidents. *Id.* Officer Watkins also had knowledge that Defendant had a warrant for his arrest and that he had a suspended license. *Id.*

Officer Watkins positioned himself behind Defendant's vehicle and initiated a traffic stop by activating his emergency lights while driving on SE Mockingbird Drive and SE Landen Drive. *Id.* Defendant continued to drive west bound toward Defendant's home, failing to comply with Officer Watkins' traffic lights. *Id.* Defendant finally came to a stop approximately three feet away from the curb in front of his home. *Id.* Defendant quickly exited his vehicle, closed the door. *Id.*

Officer Watkins told Defendant to get back in his vehicle, but Defendant did not comply. *Id.* Defendant ended up standing at the back of his vehicle while

Officer Watkins waited for another officer to arrive on scene. *Id.* When Officer Watkins asked Defendant why he didn't pull over earlier, Defendant stated that he wanted to get home. *Id.*

Officer Dennis arrived on scene and soon after dispatch advised Officer Watkins that Defendant had a confirmed warrant out of College Place Police Department for USE/DELIVER DRUG PARAPHERNALIA. *Id.* Pursuant to the confirmed warrant, Defendant was arrested and placed in the back of Officer Watkins's patrol vehicle. *Id.*

While Officer Watkins was standing outside of Defendant's vehicle, he observed a torch lighter on the passenger seat. *Id.* He also observed a plastic baggie in the driver's door pocket. *Id.* The clear bag appeared to have a white-dusty appearance which Officer Watkins indicated to be consistent with narcotics and drug paraphernalia. *Id.* Officer Watkins took a closer look at the driver's side door pocket through the windshield and observed what appeared to be a bindle of drugs. *Id. See also* Defendant's Exhibit 211, ECF 25-1 at 37.

Defendant denied having drugs in his vehicle and denied Officer Watkins's request to search his vehicle. Defendant's Exhibit 200, ECF 25-1 at 2. The Defendant's vehicle was then seized and towed to the College Place Police Department, pending approval of a search warrant. *Id.*

Sergeant Schmick, also on scene, assisted Officer Watkins by requesting an "evidence tow", following the vehicle as it was towed to the College Place Police Department, secured the vehicle with evidence tape, and logged it in the evidence system. Defendant's Exhibit 202, ECF 25-1 at 7.

Officer Watkins transported defendant to Walla Walla County Jail and booked him on the warrant. Defendant's Exhibit 200, ECF 25-1 at 2. A short time later, but still on November 17, 2026, Officer Watkins submitted his application

for a search warrant for evidence including illegal drugs, narcotics and drug paraphernalia. *Id.* The search warrant application was approved by District Court Judge K. Hedine at 12:32 PM on November 17, 2026. *Id.*

Together, Officer Watkins and Officer Dennis executed the search warrant. *Id.* Inside the driver's side door, Officer Watkins located a multiple plastic baggies with residue, each of which field tested presumptive positive for methamphetamine. *Id.* at 2-3. Underneath the passenger seat, and within arm's reach of where Defendant had been seated, Officer Dennis located a fanny pack containing an unmarked (3D printed) firearm loaded with eighteen rounds of 9mm ammunition wrapped in a blue bandana. *Id.* at 3; Defendant's Exhibit 201, ECF 25-1 at 6. Once the firearm was located, Officer Watkins requested an amended search warrant to include all firearms and firearm accessories, which was approved. Defendant's Exhibit 200, ECF 25-1 at 3; Exhibits 207-08.

Defendant now seeks to suppress the evidence recovered as a result of the above investigation.

## ARGUMENT

### I. Defendant's Vehicle Was Seized Pending a Search Warrant, and not "Impounded".

The Defendant's first contention is that officers unlawfully impounded Defendant's car, and as a result, the subsequent search of its contents pursuant to a warrant, should be found illegal and result in suppression of evidence. Defendant is mistaken as Defendant's vehicle was not "Impounded", but rather was seized as evidence, pending a search warrant.

Under Washington law, to "Impound" a vehicle means to take and hold a vehicle in legal custody. RCW 46.55.010(4). The law goes on to distinguish the difference between a public versus private impound. *Id.* Defendant relies on three

cases to articulate when a car may be lawfully “impounded”. ECF 24 at 5. Notably, each of those cases involved cars that were subject to an inventory search, in relation to a vehicle being impounded. *United States v. Maddox*, 614 F.3d 1046 (9th Cir. 2010) (finding that the vehicle was unlawfully impounded, thereby invalidating a subsequent inventory search); *State v. Williams*, 689 P.2d 1065 (Wash. 1984) (search of vehicle was not valid as an inventory search pursuant to a routine impoundment); *State v. Tyler*, 302 P.3d 165 (Wash. 2013) (upholding a warrantless inventory search of vehicle following impoundment related to traffic stop). Unfortunately for Defendant, these cases are unhelpful, as his vehicle was not impounded, but was instead “seized and towed to the College Place Police Department…awaiting approval of a search warrant.” Defendant’s Exhibit 209, ECF 25-1, at 30.

It is undisputed that the Fourth Amendment protects individuals from *unreasonable* searches and seizures of their person, residence, papers, and effects. The constitutionality of a seizure depends on its reasonableness, e.g., *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *Cooper v. California*, 386 U.S. 58, 87 (1967), and reasonableness is a distinctly fact-based inquiry.

The Supreme Court has upheld the warrantless seizure of various kinds of property for the time reasonably necessary to obtain a warrant, provided that the police have probable cause to search. *Arkansas v. Sanders,* 442 U.S. 753 (1979) (luggage); *United States v. Van Leeuwen,* 397 U.S. 249 (1970) (packages in the mail); *Segura v. United States,* 468 U.S. 796 (1984) (plurality opinion) (an apartment may be secured from the inside even absent exigent circumstances); *Segura,* 468 U.S. at 824 n. 15, (Stevens, J. dissenting) (apartment may be secured from the outside, even absent exigent circumstances).

With specific regard to cars, when an officer develops probable cause to believe that a car which he or she has lawfully stopped contains contraband, it is reasonable under the Fourth Amendment to seize and hold the car for "whatever period is necessary" in order to obtain a search warrant. *Chambers v. Maroney,* 399 U.S. 42, 52-53(1970); *Texas v. White,* 423 U.S. 1081 (1976) (per curiam); *Michigan v. Thomas,* 458 U.S. 259 (1982); *see also Cardwell v. Lewis,* 417 U.S. 583 (1974); *State v. Huff*, 64 Wash. App. 641, 649–50 (1992).

Even if the probable cause has been developed, thereby authorizing the immediate warrantless search of a vehicle, obtaining a warrant is still what the law prefers. *United States v. Rubies,* 612 F.2d 397, 404 n. 7 (9th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980); *United States v. Doty,* 714 F.2d 761, 763 (8th Cir.1983); *see also Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *Huff*, 64 Wash. App. at 649.

The purpose of the Fourth Amendment to the United States Constitution and Art. I, § 7 of the Washington Constitution is to prohibit unreasonable searches and seizures, *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973); *State v. McKinnon,* 88 Wash.2d 75, 78, 558 P.2d 781 (1977), and it is constitutionally reasonable to allow a slightly longer infringement in order to encourage the heightened protection that results from obtaining a warrant first. *Huff*, 64 Wash. App. at 651.

In short, the law allows for law enforcement to seize a vehicle in anticipation of a search warrant – provided that they have established probable cause. Because the existence of probable cause lies at the heart of Defendant's second contention, rather than repeat the same, further discussion is set forth below.

## II. Both the Initial Seizure and Subsequent Search Warrant were Supported by Probable Cause

Defendant's other complaint appears to be that the warrant was somehow lacking, but even a cursory review of the four corners of said warrant demonstrates that it was amply supported by probable cause. In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *See generally United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983). Probable cause determinations are to be made by viewing the "totality of the circumstances" set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983); *see also United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009) (reasonableness is determined by an examination of "the 'totality of the circumstances' in a 'common-sense' manner.").

A reviewing court may not reverse such a conclusion unless the magistrate's decision is clearly erroneous. *United States v. Estrada*, 733 F.2d 683, 684 (9th Cir. 1984) (citing *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238.

Affiants are only required to show a fair probability that contraband will be found. "A search warrant … is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir.), *cert. denied sub nom*, *Reinhold v. United States*, 549 U.S. 1025 (2006) (quoting *Steagald v. United States*, 451 U.S. 204, 213 (1981)). "Probable cause exists if it would be *reasonable* to seek the evidence in the place indicated in the affidavit." *Adjani*, 452 F.3d at 1145 (quoting *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (internal quotations omitted) (emphasis added)); *United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007) ("an affidavit must establish a reasonable nexus between the crime or evidence and

the location to be searched. It need only be reasonable to seek the evidence at the location indicated in the affidavit.") (internal citations omitted).

The Supreme Court has reminded and re-affirmed:

> On many occasions, we have reiterated that the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

*Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (internal citations and quotations omitted); *see also Florida v. Harris*, 568 U.S. 237, 244 (2013) (probable cause is meant to be an "all-things-considered approach") (quotations omitted). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A magistrate or judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

Reviewing courts are not "in a position to flyspeck the affidavit through de novo review." *Gourde*, 440 F.3d at 1069. Rather, the issuing judge's determination "should be paid great deference." *Spinelli v. United States*, 393 U.S. 410, 419 (1969). "This deferential approach is the antithesis of a 'grudging or negative attitude' toward search warrants and 'a hypertechnical rather than a commonsense' analysis." *Gourde*, 440 F.3d at 1069 (quoting *Ventresca*, 380 U.S. at 108–09). Disagreement with the magistrate judge does not justify exclusion of

evidence, because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

Here, both the warrantless seizure of the Defendant's vehicle, and the subsequent warrant authorizing the vehicle's search, were supported by ample probable cause. In his affidavit, Officer Watkins indicates that he observed Defendant driving a gray Toyota Camry, and he recognized both from prior incidents. *Defendant Exhibit 209,* ECF- 25-1, at 28-29. He was aware that Defendant had an outstanding warrant and as well as a suspended license. *Id.* at 30. Officer Watkins attempted to stop the vehicle by activating his emergency lights. The Defendant failed to comply and continued driving toward Defendant's house. *Id.* Defendant came to a stop approximately 3 feet away from the curb of his residence, quickly got out of the vehicle and closed the door. *Id.* Defendant was told to get back into his vehicle but did not comply. *Id.* When asked why he did not pull over immediately, Defendant indicated he wanted to get home. *Id.* A short time later, Defendant's warrant was confirmed for USE/DELIVER DRUG PARAPHERNALIA. *Id.*

Defendant was then placed under arrest. While standing outside of Defendant's vehicle, Officer Watkins observed in plain view, a torch lighter on the passenger seat, and a plastic baggie with an apparent white dusty appearance, inside the driver's door pocket. *Id.* Officer Watkins advised that this was consistent with drugs and drug paraphernalia. Through the windshield, Officer Watkins could see what further appeared to be a bindle of drugs:



Defendant's Exhibit 211, ECF 25-1 at 37.

Stating all these things differently, Officers were familiar with Defendant and his vehicle from prior contacts. Defendant did not immediately stop when officers attempted to pull him over, giving him time to try and hide or conceal contraband. Defendant immediately exited his car, closing the door, consistent with trying to separate himself from the vehicle (and contraband). Officers weren't just aware that Defendant had a warrant, it was later confirmed to be a warrant related

to possession of drug paraphernalia – the same offense the officers began investigating after seeing the torch lighter and baggies within Defendant's car.

It is also worth noting, at least with respect to probable cause justifying the initial vehicle seizure[1], there are two statements that were particularly telling and captured on the bodycam footage. First, during the initial encounter while waiting for the warrant to be confirmed, Defendant indicates confusion over having a warrant because he has "been in compliance", and was trying to get into drug court. Defendant's Exhibit 206, ECF 25-1 (approx. 4:45-5:05). Second, when Officer Dennis returned Defendant's phone and keys over to Defendant's parents, they told Officer Dennis that their son had struggled with drugs for a long time, needed help, and suggested that officers keep Defendant in jail for 3-4 days to help him get clean. Defendant's Exhibit 205, ECF 25-1 (approx. 9:00-9:41).

Taken together, these statements indicate that both Defendant and his parents recognize the Defendant had an ongoing drug addiction, and that he needed help. Combined with Defendant's behavior, history, and their observations of the torch lighter/baggies, Officers were certainly justified in seizing Defendant's vehicle.

Ultimately, even without those statements in the search warrant affidavit, under the totality of the circumstances, officers had sufficiently established probable cause suggesting that it was likely Defendant's vehicle contained evidence of the crime of Possession of Drug Paraphernalia. Because of this, the initial seizure of his vehicle was lawful, and the affidavit in support of the warrant

---

[1] The Government recognizes that these statements were not referenced in the Search Warrant Affidavit, thus, should not be considered when assessing probable cause as it relates to the search warrant.

was sufficient to allow the judge to make an independent determination as to the issue.

## III. The Officers Executing the Warrant Acted in Good Faith

Even if the Court were to find the affidavits lacking, no evidence should be suppressed because the executing officers relied in good faith on Judge Hedine's finding of probable cause. It is firmly established that "suppression of the evidence found in a search pursuant to that warrant is not justified if the officer's reliance on the [judge's] determination of probable cause was objectively reasonable." *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). As the Supreme Court noted, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis v. United States*, 564 U.S. 229, 238 (2011) (quotations and citations omitted); *see also Crews*, 502 F.3d at 1136 (reviewing court has discretion to skip directly to consideration of good faith) (citations omitted).

Here, each warrant was executed in good faith reliance on a finding of probable cause by Judge Hedine. There is no indication that the judge abandoned his/her neutral arbiter role in reaching his/her conclusions. Defendant asserts generally that the warrants lacked sufficient probable cause, but as set forth above, each warrant contained sufficient facts for a reasonably prudent magistrate to find probable cause. Thus, assuming *arguendo* that this Court were to find the warrant lacking in probable cause, suppression is still inappropriate because the executing officers reasonably relied on the warrants and the good faith exception applies.

The good faith "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was

illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. Even if the Court were to find any warrant facially invalid it "must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid." *Id.* at 923. Officer Watkins specifically identified numerous bases to establish probable cause for the initial and amended warrants, officers stopped searching when they found something that exceeded the scope, and there is no substantiated allegation here that any information in any warrants was inaccurate or misleading. It was reasonable for the officers to presume the validity of the warrants.

## IV. Defendant's Request for an Evidentiary Hearing

The United States recognizes that in this context, the Court has broad discretion in determining whether to hold an evidentiary hearing. However, the United States does not believe that Defendant has made a showing that there is a dispute of material facts. For this same reason, defendant's request for an evidentiary hearing may be denied. It appears that defendant simply wishes to test the officers' police reports and declarations by cross-examination. This is an insufficient basis upon which to request for an evidentiary hearing. *See United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.") (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986), *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990), *United States v. Irwin*, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980) and *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)); *United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991) (the broad declaration of defense counsel asserting that the defense motion's statement of facts was based upon discovery, rather than a

declaration from an individual competent to testify, was not sufficient to require the granting of an evidentiary hearing); *United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine.").

Accordingly, as the United States does not believe there is a legitimate dispute as to any material facts, an evidentiary hearing appears unnecessary. If the Court wishes to hear live testimony however, the United States will take the necessary steps to make that happen and have the witnesses available.

## CONCLUSION

Under the totality of the circumstances, the seizure of the vehicle was lawful, the search warrant was supported by probable cause, and even if it wasn't the officers acted in good faith in their reliance of Judge Hedine's finding of probable cause. Accordingly, the United States respectfully requests that the Court DENY Defendant's Motion to Suppress.

Dated: September 30, 2026.

Todd Blanche
Attorney General

*s/Brandon L. Pang*
Brandon L. Pang
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will email notification of such filing to the following:

Ben Hernandez

*s/Brandon L. Pang*
Brandon L. Pang
Assistant United States Attorney